UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERRI L. THORPE,

                        Plaintiff,

          -against-                                    3:12-CV-0063 (LEK/DEP)

PIEDMONT AIRLINES, INC.;
RONALD HYNES; WILLIAM ROCCO
and MICHELLE FOOSE,

                        Defendants.
_____

**MEMORANDUM-DECISION and ORDER**

## I.      INTRODUCTION

        On January 12, 2012, Plaintiff Terri L. Thorpe ("Plaintiff"), a resident of Tioga County, New

York commenced this action *pro se*.  Dkt. No. 1 ("Complaint").  Plaintiff names Piedmont Airlines,

Inc. ("Piedmont"), Ronald Hynes ("Hynes"), William Rocco ("Rocco"), and Michelle Foose

("Foose") as Defendants in this case.  Id. at 2.  Defendant Hynes is a resident of Chitenden County

in Vermont; Defendant Rocco is a resident of Tompkins County in New York; and Defendant Foose

is a resident of Dauphin County in Pennsylvania.  Id.  Defendant Piedmont is a corporation

incorporated in Pennsylvania with a place of business in Binghamton, New York.  Id.  Plaintiff

brings this action under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2, and N.Y. Exec. L. § 290 *et. seq.*

alleging discrimination and harassment on the basis of age.  Id. at 1.

        Presently before the Court is a Motion to dismiss for failure to state a claim upon which

relief could be granted, filed by Defendants on May 1, 2012.  Dkt. No. 12 ("Motion").  In asking the

Court to dismiss Plaintiff's claims, Defendants argue that: (1) Plaintiff's claims against all

Defendants for violation of the New York State Humans Rights Law ("NYSHRL") are barred by the

remedies provision in N.Y. EXEC. L. § 297(9); (2) Plaintiff's claims of sex and age discrimination

are not cognizable under 42 U.S.C. § 1981; (3) Plaintiff's claims of age discrimination are not

cognizable under Title VII of the Civil Rights Act of 1964 ("Title VII"); (4) Plaintiff cannot bring a

suit under Title VII or under the Age Discrimination in Employment Act ("ADEA") against

individual Defendants as these statutes do not allow for individual liability; (5) Plaintiff's claims

under Title VII and the ADEA are time-barred by the applicable statute of limitations; and (6)

Plaintiff fails to state a cause of action under Title VII or the ADEA.  Mot. 1-2.

For the reasons stated below, Defendants' Motion to dismiss is granted in part and denied in

part.

## II.     BACKGROUND

### A.  Factual Background

Plaintiff is a fifty-one year old female.[1]  Compl. 3.  Plaintiff was hired by U.S. Airways

Express on August 9, 2001 and employed as a Customer Service Agent at Elmira Corning Regional

Airport.  Id. at 3.  In September 2005, Plaintiff accepted a supervisory position at  Newport News

International Airport in Newport News, Virginia, with Piedmont Airlines (an affiliate of U.S.

Airways Express).  Id.  Subsequently, in January of 2008, Plaintiff accepted a position with

Piedmont Airlines at the Binghamton Regional Airport in New York.  Id.

Upon joining the Binghamton Regional Airport office, Plaintiff worked with Defendant

Hynes.[2]  Id.  Plaintiff indicates that her professional relationship with Defendant Hynes seemed to

---

[1]  Plaintiff's age is calculated from the facts stated in her Complaint at the time it was filed.

[2]  The Court is unable to determine the precise position that Defendant Hynes held in relation to Plaintiff; however, it can be assumed that Defendant Hynes was in some form of supervisory position over Plaintiff.

be fairly amicable, with Defendant Hynes consistently praising Plaintiff's work.  Id.  Their

relationship soured, however, when Defendant Hynes borrowed a sum of money from Plaintiff.[3]  Id.

As a result of this loan, Defendant Hynes created a hostile working environment that involved

denial of training opportunities, demotions, age discrimination, and derogatory comments.  Id.

Plaintiff points to specific events to demonstrate the treatment she alleges.  For example, in May

2010, specific training necessary to maintain her position with Defendant Piedmont was held.  Id. at

4.  Plaintiff, however, was not included in the original schedule to attend this training with the other

supervisors and agents and was added to the training schedule only after numerous requests to

Defendant Hynes.  Id. at 4.  Plaintiff was the only supervisor not included in subsequent training

sessions.  Id.  Further, in January 2008, Defendant Hynes without reason or cause revoked

Plaintiff's access to the Mainline DECS, a system allowing supervisors to monitor and track flight

information.  Id.  This in turn affected Plaintiff's ability to perform her job as a senior supervisor

effectively.  Id. at 4-5.

　　　　Subsequently, in February 2009, Defendant Hynes promoted Austin Johnson to a

supervisory position.  Id. at 3.  Johnson was a young male, approximately twenty-five years old and

a close friend of Defendant Hynes.  Id.  Plaintiff alleges that at the time Johnson was promoted, he

lacked the qualifications and training requirements necessary to be appointed to a supervisory

position.  Id.  Nonetheless, Johnson was given the opportunity to work alongside Defendant Hynes

in training new recruits.  Id. at 5.  As a result of the promotion, Johnson was scheduled and

permitted to attend the same training sessions as Plaintiff.  Id. at 4-5.

---

[3]  Defendant Hynes had originally requested to borrow $1,000.00 from Plaintiff, but Plaintiff
was only able to loan him $500.00.  Compl. 6.

In addition to denying Plaintiff training opportunities, Defendant Hynes revoked certain responsibilities from her without explanation, gave Johnson priority, and made several remarks to and about Plaintiff regarding her age.  Id. at 5.  For example, Defendant Hynes regularly called Plaintiff the "golden girl" in a derogatory fashion to imply that she was the "oldest supervisor, the oldest female," and the eldest among all the other agents.  Id. at 6.  Further, Defendant Hynes would encourage and instigate other derogatory remarks.  Id.  On July 7, 2010, Plaintiff was informed that Defendant Hynes told another supervisor, "Terri is such a fucking bitch and I cannot stand her."  Id. at 6.  The supervisor speaking with Defendant Hynes replied, "[Y]es she is a fucking bitch."  Id. Plaintiff contends that she endured constant verbal and emotional abuse throughout her employment relationship with Defendants Hynes and Piedmont.  Id.  Plaintiff further claims that she raised her concerns with Defendant Hynes; however, the harassment and insults continued.  Id. at 7.  Plaintiff alleges that Defendant Hynes took those actions to prevent her from advancing in her career and to force her into terminating her employment with Defendant Piedmont.  Id. at 3.

Plaintiff further contends that she raised her concerns with Defendant Hynes's superior, Defendant Rocco.  Id. at 7.  Plaintiff and Defendant Rocco exchanged several emails and telephone calls regarding Plaintiff's complaints.  Id.  Defendant Rocco was aware of the problems between Plaintiff and Defendant Hynes, but took no action to correct the situation.  Id.  Plaintiff also brought her concerns to Defendant Foose, who worked in the Human Resources Department for Defendant Piedmont.  Id. at 8.  Defendant Foose dismissed Plaintiff's complaints by saying that Plaintiff had a "personality conflict" with Defendant Hynes and that there was nothing Defendant Foose could do for Plaintiff.  Id. at 8.

On January 7, 2011, Plaintiff was terminated in a written communication citing her past

4

history with the company.  Id. at 7.  Plaintiff claims that she never received any evaluation forms or

discussion regarding her performance throughout the length of her employment with Defendant

Piedmont.  Id. at 8.  In addition, Plaintiff claims that Defendant Piedmont's Human Resources

Department did not make any effort to assist Plaintiff in addressing her concerns regarding the

treatment by Defendant Hynes and the hostile working environment.  Id. at 8.

### B. Procedural Background

On February 17, 2011, Plaintiff filed a Verified Complaint with the New York State

Division of Human Rights ("NYSDHR") alleging unlawful discriminatory practice relating to her

employment with Defendant Piedmont.  Dkt. No. 16-1 ("Verified Complaint") at 2.  In her Verified

Complaint, Plaintiff alleged acts of employment discrimination against Piedmont Airlines and the

individual Defendants, based on age and sex that created a hostile work environment and led to her

wrongful termination from employment.  Id. at 4.  On July 29, 2011, the NYSDHR issued Plaintiff a

Determination and Order After Investigation.  Dkt. No. 12-4 ("Determination").  The Determination

stated that "[a]fter investigation, and following opportunity for review of related information and

evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE

to believe that the respondents have engaged in or are engaging in the unlawful discriminatory

practice complained of."  Id. at 2.  The NYSDHR advised Plaintiff that she had sixty days to appeal

the Determination to a New York State Supreme Court in the county in which the alleged

discrimination took place.  Id.  In addition, the Determination stated that the NYSDHR had

forwarded Plaintiff's Verified Complaint to the U.S. Equal Employment Opportunity Commission

("EEOC") for enforcement of the federal claims brought by Plaintiff.  Id. at 3.  Lastly, the

Determination stated that Plaintiff had the right to request in writing that the EEOC review this

action within fifteen days of the Determination.  Id.

Because Plaintiff did not request that the EEOC review her Verified Complaint, the EEOC

issued a Dismissal and Notice of Rights adopting the findings of the NYSDHR.  Dkt. 12-5

("Notice").  The Notice stated that Plaintiff could "file a lawsuit against the respondent(s) under

*federal law* based on [the] charge in *federal* or state court" within ninety days of the notice.  Id. at 2.

Subsequently, on January 13, 2012, Plaintiff filed the instant Complaint alleging discrimination and

harassment by Defendants through her employment with Piedmont Airlines.  Compl. 1.

## III.   LEGAL STANDARDS

### A.  Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a determination

"requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556

U.S. at 679 (citation omitted).  A court must accept as true the factual allegations contained in the

complaint and draw all inferences in favor of the Plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d

248, 249-50 (2d Cir. 2006).  Under the Federal Rules of Civil Procedure, the pleading requirement

is satisfied by "a short and plain statement of the claim showing that the pleader is entitled to relief."

FED. R. CIV. P. 8(a)(2).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it

appears that there are not "enough facts to state a claim to relief that is plausible on its face."

Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation

that discovery will reveal evidence of [the alleged misconduct]."  Id. at 556.  The plausibility

standard "asks for more than a sheer possibility that a Defendant has acted unlawfully." Iqbal, 556

U.S. at 678.  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  Where a court is unable to

infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the

pleader has not demonstrated that he or she is entitled to relief and the action is subject to dismissal.

See Iqbal, 556 U.S. at 678-79.

### B.  Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure states that "a party may amend its pleading

only with the opposing party's written consent or the court's leave[,] . . . [but] [t]he court should

freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2); Local 802, Assoc. Musicians

of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); see Salahuddin v.

Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) ("[t]he district court has discretion whether or not to grant

leave to amend")(internal quotations omitted).

> In the absence of any apparent or declared reason – such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. – the leave sought should,
> as the rules require, be 'freely given.'

Foman v. Davis, 371 U.S. 178, 182 (1962).  Additionally, the allegations of a *pro se* litigant are to

be construed under a "less stringent standard[] than formal pleadings drafted by lawyers."  Haines v.

Kerner, 404 U.S. 519, 520-21 (1972); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

Accordingly, a *pro se* plaintiff should be given the opportunity "to amend at least once when a

liberal reading of the complaint gives any indication that a valid claim might be stated."  Gomez v.

USAA Fed. Sav. Bank, 171 F.3d 794, 795-96 (2d Cir. 1999).

**IV.      DISCUSSION**

   **A.  Claims Under 42 U.S.C. § 1981 and Title VII**

   Plaintiff raises claims under 42 U.S.C. § 1981 and Title VII alleging harassment, age

discrimination and termination from her employment based on age.  Compl. 1.  Section 1981 states,

in part, that  "[a]ll persons within the jurisdiction of the United States shall have the same right in

every State . . . to the full and equal benefit of all laws and proceedings for the security of persons

and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Although the  statute does not

use the word "race," the Supreme Court has construed the statute to "forbid all 'racial'

discrimination in the making of private as well as public contracts."  Saint Francis Coll. v. Al-

Khazraji, 481 U.S. 604, 609 (1987).  The purpose of § 1981 is to guarantee equal rights to

individuals of all races in making and enforcing contracts, and as such, the statute prohibits racial

discrimination against whites and nonwhites alike.  McDonald v. Santa Fe Trial Transp. Co., 427

U.S. 273, 295 (1976).

   Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to

discharge any individual, or otherwise to discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  This protection covers "'the

entire spectrum of disparate treatment of men and women' in employment, which includes requiring

people to work in a discriminatorily hostile or abusive environment."  Harris v. Forklift Sys., Inc.,

510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).

   In this case, Plaintiff  is "alleging that she was harassed, treated differently with regard to his

8

[sic] employment and ultimately terminated because of age." Compl. 1. Because Plaintiff does not allege any racial discrimination in the formation or enforcement of contracts, Plaintiff does not state a claim under § 1981. In addition, age discrimination claims cannot be brought under Title VII. Accordingly, § 1981 and Title VII are inapplicable to the facts in the instant case.

The Court notes, however, that although Plaintiff states that the allegations of discrimination are based primarily on age discrimination, Plaintiff may also have a claim based on sex discrimination. If that were the case, Title VII might be an appropriate vehicle through which to seek relief; however, in order to state such a claim Plaintiff would have to allege specific facts regarding it.

**B. Claims under New York State Executive Law § 290, *et. seq.***

Plaintiff alleges that Defendants are in violation of the NYSHRL. Compl. at 1. Plaintiff brings these state law claims pursuant to pendent and supplemental jurisdiction under 26 U.S.C. § 1367. Id. Defendants, however, contend that Plaintiff's allegations of discrimination based on the NYSHRL are barred by the election of remedies provision outlined in N.Y. EXEC. L. § 297 (9). Mot. 6. For the following reasons, the Court finds such bar applicable to this case.

Plaintiff brings state law claims pursuant to the New York's human rights law. Specifically, § 296 of the NYSHRL states in relevant part that:

> [I]t shall be an unlawful discriminatory practice (a) for an employer . . . because of an individual's age . . . [and] sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" or to "discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article. . . . N.Y. EXEC. L. §§ 296 (1)(a), (1)(e).

Further, § 297(9) states that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . ." N.Y. EXEC. L. § 297(9).

Defendants argue that Plaintiff's claims under NYSHRL are barred by the election of remedies provision in § 297(9). Mot. at 6. Specifically, Defendants contend that Plaintiff has brought a subsequent judicial action on the same issues that were litigated by the NYSDHR, and as a result, such claims are barred. Id. Plaintiff responds that despite the election of remedies provision, she may bring state law claims under 28 U.S.C. § 1367 because the Court may invoke supplemental and pendent jurisdiction so long as the state law claims are related to her federal claims. Compl. at 2.

Generally, when a plaintiff chooses to file a complaint with the NYSDHR, such filing constitutes an election to proceed in an administrative forum and such election bars a subsequent judicial course of action on the same facts. N.Y. EXEC. L. § 297(9); see also Emil v. Dewey, 406 N.E.2d 744 (N.Y. 1980). The Second Circuit has consistently held that "the remedies of administrative review through the Human Rights Division or judicial review are mutually exclusive." Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995). Essentially, once a plaintiff has brought a complaint under the NYSDHR, "that becomes the sole avenue of relief, and subsequent judicial action on the same complaint" is barred. Id. at 884 (internal quotations omitted); see also York v. Ass'n of the Bar of N.Y., 286 F. 3d 122, 127 (2d Cir. 2002) (holding that claims brought in front of the NYSDHR "may not be brought again as a plenary action in another court"). The only exceptions to this general rule are provided in N.Y. EXEC. L. § 297(9)

which states that "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division."  N.Y. EXEC. L. § 297(9).

In the present case, it is undisputed that Plaintiff filed a timely Verified Complaint with the NYSDHR.  In order to bring her NYSHRL claims in a subsequent judicial proceeding, however, Plaintiff's Verified Complaint had to be dismissed by the NYSDHR on the grounds of (1) administrative convenience, (2) untimeliness, or (3) the annulment of the election of remedies.  N.Y. EXEC. L. § 297(9).  Here, the Determination issued by the NYSDHR did not dismiss Plaintiff's claim on any of the aforementioned grounds, nor is there any proof that Plaintiff sought for her Verified Complaint to be dismissed on the grounds of administrative convenience.[4]  Determination at 3.  Instead, Plaintiff has attempted to bring her state law claims in a federal district court in contravention of the procedures outlined in N.Y. EXEC. L. § 297 (9).  See York, 286 F.3d at 127 (stating that "a party can only exercise a statutory or code-created right of action as the statute or code provides . . . N.Y. EXEC. L. § 297(9) and § 298 are valid statutory instruments, and neither represents an inappropriate procedural limitation on the right of action which it modifies.").

Because Plaintiff's Verified Complaint with the NYSDHR was not dismissed on any of the aforementioned grounds,  Plaintiff is statutorily barred from bringing her NYSHRL claims.  Although Plaintiff commenced this litigation *pro se*, the Court cannot remedy this statutory bar.  Contrary to Plaintiff's contention that the Court may exercise supplemental jurisdiction pursuant to

---

[4]  The Court notes that the NYSDHR gave Plaintiff the opportunity to appeal the Determination within sixty days.  Determination at 3.  The record, however, reflects that Plaintiff did not appeal such Determination.

28 U.S.C. § 1367, the Court may not exercise jurisdiction over state law claims that are barred by

state law.  Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's NYSHRL claims

and therefore must dismiss such claims.  See FED. R. CIV.12 (h)(3).

### C. Claims Under the ADEA

Although Plaintiff does not expressly indicate that she is bringing a cause of action under the

ADEA, she alleges unlawful employment discrimination on the basis of her age in the instant

Complaint.  Compl. at 1.  In her Complaint, Plaintiff states that "she was harassed [and] treated

differently with regard to [her] employment and ultimately terminated because of age."  Id.

Therefore, the Court addresses the merits of Plaintiff's ADEA claim.

#### 1. Liability Under the ADEA Against Individual Defendants

The ADEA states that "it shall be unlawful for an employer to fail or refuse to hire or to

discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623.  Under the ADEA, an employer is defined as "a person engaged in an industry

affecting commerce who has twenty or more employees."  29 U.S.C. § 630(b).  Further, a person is

defined as "one or more individuals, partnerships, associations, labor organizations, corporations,

business trusts, legal representatives, or any organized group of persons."  29 U.S.C. § 639(a).  With

respect to individual liability, there is no basis for imposing individual liability on agents of an

employer under the ADEA's definition.  Walsh v. City of Auburn, 942 F. Supp. 788, 797 (N.D.N.Y.

1996).  Because the statutory language of the ADEA is similar to the language of Title VII, courts

have concluded that the statutory language precludes individual liability.  See Wray v. Edward

Blank Assoc., Inc., 924 F. Supp. 498, 503 (S.D.N.Y. 1996) (noting that the substantial similarities

between the ADEA and Title VII permit courts to look to Title VII for guidance in interpreting the ADEA and holding that "individuals in their individual capacity may not be liable under the ADEA."); see also Leykis v. NYP Holdings, Inc., 899 F. Supp. 986, 990 (E.D.N.Y. 1995) (holding that the ADEA is "intended to create respondeat superior liability against employers for the acts of their agents" and therefore imposes liability on the employer entity, not on the individuals).

The Court finds that the individual Defendants named in Plaintiff's Complaint – Defendants Hynes, Rocco, and Foose – cannot be held individually liable under the ADEA (or Title VII if applicable in this case). As a result, the Court analyzes the remaining issues in this case with Piedmont Airlines as the sole remaining Defendant.

### 2. *ADEA Statute of Limitations*

Defendants contend that Plaintiff's ADEA claim, even if properly executed is untimely. Mot. 10. Specifically, Defendants contend that because Plaintiff filed her complaint with the NYSDHR on February 17, 2011, the discriminatory acts alleged by Plaintiff prior to April 23, 2010 are outside the scope of the 300-day statute-of-limitations period. Id. at 11. The Court, however, finds that Plaintiff's allegations of discriminatory conduct prior to April 23, 2010 may be considered in evaluating her ADEA claim as they were continuous acts of discrimination.

The statute of limitations under the ADEA is 300 days from the occurrence of the alleged unlawful activity, regardless of when it is filed with the state's human rights administrative agency. 29 U.S.C. § 626(d)(1)(B); see also Brodsky v. City Univ. of N.Y., 56 F.3d 8, 9 (2d Cir. 1995); Reinhard v. Fairfield Maxwell, Ltd., 707 F.2d 697, 700 (2d Cir. 1983). Because New York state has it's own law prohibiting discrimination on the basis of age, New York is considered a "deferral

state" under the ADEA, meaning that Plaintiff in this case is subject to the ADEA's 300-day statute-of-limitations.  29 U.S.C. §§ 626(d)(1)(B), (e); see also N.Y. EXEC. L. § 296(1)(a).

A discrimination claim "accrues when the plaintiff 'knows or has reason to know' of the injury that is the basis of the action."  Morse v. Univ. of Vermont, 973 F.2d 122, 125 (2d Cir. 1992).  The "timeliness of a discrimination claim is measured from the date the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect."  O'Malley v. GTE Service Corp., 758 F.2d 818, 820 (2d Cir. 1985); see also Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985).  However, in cases in which there is an ongoing policy or practice of discrimination, courts have applied the "continuing violation" doctrine.

The continuing violation doctrine creates an exception to the statute of limitations proscribed by the ADEA by extending the limitations period for all discriminatory acts committed even if those acts standing alone would have been barred by the statute of limitations.  Miller, 755 F.2d at 23; see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997).  Specifically, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)).  In order to bring a claim under this doctrine, however, a plaintiff must allege that specific acts in furtherance of the discriminatory policy or practice occurred during the limitations period.  Generally, separate and distinct acts not related to the discriminatory practice do not amount to a continuing violation "unless such incidents are specifically related and are allowed to continue unremedied for 'so long as to amount to a discriminatory policy or practice.'"  Lightfoot, 110 F.3d at 907 (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996); see also National R.R. Passenger Corp. v. Morgan,

14

536 U.S. 101, 103 (2002).  Therefore, so long as a plaintiff can demonstrate that one act contributing to the discrimination claim occurred within the statute of limitations period, a court may consider the entire period of the hostile environment in determining liability.  National R.R. Passenger Corp., 536 U.S. at 117; see also Van Zant, 80 F.3d at 713-14.

In the present case, Plaintiff filed a Verified Complaint with the NYSDHR that was dual-filed with the EEOC on February 17, 2011.  Mot. at 3.  Defendants contend that pursuant to the 300-day statute of limitations period any claims prior to April 23, 2010 would not fall within the scope of the statute of limitations period.  Dkt. No. 17 at 4.  Further, Defendants assert that to the extent Plaintiff's allegations of discriminatory conduct are single discrete acts, they are exempt from the continuing violations doctrine.  Id.

The Court finds that Plaintiff's statute of limitations for her ADEA claim began to run on February 17, 2011 when she filed her Verified Complaint with the state's administrative agency.  Therefore, according to the 300-day period statute of limitations, claims arising from any acts prior to April 23, 2010, would be barred as they would be outside of the scope of the statute of limitations period.  However, in the interest of justice and mindful of Plaintiff's *pro se* status, the Court finds that the continuing violations doctrine tolls Plaintiff's statute of limitations period and extends it to cover all acts alleged in Plaintiff's Complaint in their entirety.

Although Plaintiff may not have pleaded her allegations with the utmost specificity, it is plausible that the alleged discriminatory acts were not single, unrelated discriminatory acts but instead were acts in furtherance of a policy of discrimination.  Plaintiff mentions numerous times in her Complaint and her Response to Defendants' Motion to dismiss that she tried to seek help from upper management officials only to find that her complaints were ignored despite management's

15

knowledge of misfeasance. Dkt. 16 ("Response") at 2. Further, Plaintiff asserts that she approached the supervisory Defendants named in this case several times regarding the harassment and discriminatory behavior by Defendant Hynes, but her complaints were disregarded. Id. at 3.

Unlike cases in which there is no clear relationship among the different acts of discrimination[5] or the acts are not in furtherance of a company practice or policy,[6] the discriminatory acts that Defendant Hynes perpetrated were continuous; they relate to similar repetitive incidents such as denied training opportunities, revocation of access to pertinent information, and exclusion from the work schedule. See generally Compl. Although initially the discriminatory acts against Plaintiff may not have been in furtherance of a particular discriminatory policy or practice, the allegation that Plaintiff notified Defendant supervisors of such conduct and Defendants failed to remedy the actions of Defendant Hynes makes out a claim not only for acquiescence in the discriminatory conduct but also the furtherance of a discriminatory practice. Therefore, the Court finds that Plaintiff's allegations of discriminatory conduct prior to April 23, 2010, are not clearly time-barred, as the specific incidents comprise a discriminatory practice perpetrated by Defendant Hynes and acceded to by management. Accordingly, the Court finds that Plaintiff's claim in its entirety is within the ADEA statute of limitations. See 29 U.S.C. §§ 626 (d)(1)(B),(e).

### 3. Merits of the ADEA Claim

Although Plaintiff's age discrimination claim was brought within the statute of limitations and was partly brought against the proper parties, namely Defendant Piedmont, the Court nonetheless finds that Plaintiff has failed to establish a prima facie case under the ADEA.

---

[5] See generally Allah v. N.Y. Dep't of Parks & Rec., 47 F. App'x 45 (2d Cir. 2002).

[6] See Van Zant, 80 F.3d at 713.

Evaluating an ADEA claim involves a four-step process.  First, in order to establish a prima facie case of age discrimination, Plaintiff bears the initial burden of demonstrating "(1) that [she] is a member of the class protected by the statute; (2) that [she] was actively or constructively discharged; (3) that [she] was qualified to hold the position from which [she] was terminated; and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination."  Ferrante v. Am. Lung Ass'n, 687 N.E.2d 1308, 1308 (N.Y. 1997) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).[7]

In proving the last element of the prima facie case, courts have held that discriminatory intent may be established by the circumstances either leading to the adverse employment action or subsequent to such action.  See Leibowitz v. Cornell Univ., 584 F.3d 487, 502-03 (2d Cir. 2009). These circumstances exist where a substantially younger employee is re-assigned a plaintiff's duties subsequent to the plaintiff's discharge or a plaintiff is replaced by a younger employee.  See, e.g., Carlton v. Mystic Transp. Inc., 202 F.3d 129 (2d Cir. 2000); Viola v. Phillips Med. Sys. of N. Am., 42 F.3d 712, 712-17 (2d Cir. 1994); Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 105 (2d Cir. 1989).

Once a plaintiff has established a prima facie case of age discrimination, the burden of proof shifts to the employer "to rebut the presumption of discrimination . . . through the introduction of admissible evidence, legitimate, independent, and nondiscriminatory reasons to support its employment decision."  Ferrante, 687 N.E.2d at 1308 (internal quotations omitted).  However, "[d]espite the absence of the presumption, plaintiff is still entitled to prove that the legitimate

---

[7]  The prima facie standard applied to Title VII cases may also be applied to age discrimination claims under the ADEA.  See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 134 (2000); see also Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000).

reasons proffered by defendant were merely a pretext for discrimination." Id. (citing McDonnell, 411 U.S. at 805). Thus, once an employer has provided a nondiscriminatory reason for their alleged actions, a plaintiff may still prevail if she can show that the action was in fact the result of discrimination. Recently, the Supreme Court clarified this final step by dictating that a plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs. Inc., 557 U.S. 167, 177 (2009); see Gorzynski v. JetBlue Airways Corp., 596 F.3d 93,107 (2d Cir. 2010).

    In the instant case, Plaintiff has failed to make a prima facie case of age discrimination. Although Plaintiff (1) qualifies as a member of the protected class under 29 U.S.C. § 633a(a), (2) suffered an adverse employment action as she was discharged from her position with Defendant Piedmont, and (3) presumably was qualified to hold her specific position with Defendant Piedmont, Plaintiff has failed to demonstrate that the discharge from her position occurred under circumstances giving rise to an inference of age discrimination. Essentially, Plaintiff has failed to show that age was a motivating reason or determining factor of her termination.

    Plaintiff's factual allegations are attributable to personal differences and difficulties with Defendant Hynes. Mot. at 14. Further, although Plaintiff describes events that establish a discriminatory practice, such allegations do not demonstrate that age contributed to such discrimination or her ultimate termination from employment. Mot. at 16; Compl. at 4-10. Further, there is no evidence of any correlation between Johnson's promotion to supervisor and Plaintiff's termination. See generally Compl. Although such factual information would not wholly prove age discrimination, it would provide sufficient proof that age was a factor and would demonstrate that Plaintiff may have been replaced by a substantially younger individual with identical responsibilities

and duties.  However, according to Plaintiff's current factual allegations, this is not the case.

Therefore, because Plaintiff has failed to show that the alleged discrimination and termination from

employment arose under circumstances giving rise to an inference of age discrimination, Plaintiff

has failed to establish a prima facie case under the ADEA.

### D.  Leave to Amend

Based on a review of Plaintiff's current factual allegations, the Court concludes that Plaintiff

has not pleaded a claim under the ADEA or Title VII.  However, to the extent Plaintiff attempts to

re-assert claims under the ADEA or assert claims under Title VII, Plaintiff must clearly specify facts

that will conform to the standards of review for such statutory relief.  A liberal reading of Plaintiff's

*pro se* complaint suggests that amendment to state such claims might not be futile.  Gomez, 171

F.3d at 795-96.  Therefore, the Court finds that Plaintiff should be permitted leave to amend to bring

her claims under the proper federal statutory schemes and with sufficient specificity.[8]

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 12) to dismiss is **GRANTED in part** and

**DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's claims under the ADEA and Title VII are **DISMISSED**

**without prejudice**; and it is further

**ORDERED**, that all Plaintiff's New York State Human Rights Law claims are

**DISMISSED with prejudice**; and it is further

---

[8]  In granting Plaintiff leave to amend, the Court takes no position on whether any amended
claims might survive a properly filed motion to dismiss or motion for summary judgment.

**ORDERED**, that all Plaintiff's claims against individual Defendants under the ADEA are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's claims under §1981 are **DISMISSED with prejudice**; and it is further

**ORDERED**, that if Plaintiff wishes to amend her Complaint (Dkt. No. 1) and proceed with this action, she must do so **within thirty (30) days** from the date of filing of this Memorandum-Decision and Order. If Plaintiff does not comply with this Memorandum-Decision and Order in a timely fashion, however, this matter will be **dismissed without prejudice[9] without further order of the Court**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties by regular mail.

**IT IS SO ORDERED.**

DATED:      February 22, 2013
             Albany, New York

Lawrence E. Kahn
U.S. District Judge

---

[9] Those claims already expressly dismissed with prejudice by this Memorandum-Decision and Order, however, will of course remain dismissed with prejudice.